**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RODNEKA PERRY and SAMANTHA YOUNG, individually, and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>AMAZON LOGISTICS, INC.; AMAZON.COM, INC.; AMAZON.COM SERVICES LLC f/k/a AMAZON.COM, LLC; and AMAZON WEB SERVICES, INC.,<br><br>            Defendants. | Case No.: 1:23-cv-03383<br><br>Honorable John Robert Blakey |

**<u>DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................. 3

    A.  Amazon Flex and the Flex Identity-Check Process ................................... 3

    B.  Plaintiffs' Claims ...................................................................................... 5

III. STANDARD UNDER 12(B)(6) ......................................................................... 6

IV. ARGUMENT ...................................................................................................... 6

    A.  Plaintiffs' Improper Collective Pleading Requires Dismissal of All Claims ......... 6

    B.  Plaintiffs' Claims Are Contradicted by Documents Incorporated in the FAC ..... 10

        1.  The incorporated Flex FAQs show that the Amazon Defendants complied with Section 15(a) of BIPA. ...................................... 11

        2.  The incorporated 2019 Flex TOS and Identity Verification Consent screen show that the Amazon Defendants complied with Section 15(b). ................................................................................. 13

    C.  Plaintiffs' Claims Are Barred by the Flex TOS .................................... 14

    D.  Plaintiffs' Section 15(d) Claim is Conclusory and Meritless ............... 16

        3.  Plaintiffs fail to plead any facts from which this Court could infer that their data was disclosed to third parties. ........................... 16

        4.  The Court should reject Plaintiffs' novel theory of intra-organizational "disclosure." ............................................................ 17

V.  CONCLUSION .................................................................................................. 18

## TABLE OF AUTHORITIES

*(Continued)*

**Page(s)**

CASES

*188 LLC v. Trinity Indus., Inc.*,
300 F.3d 730 (7th Cir. 2002) ......................................................................................10, 11

*Allen Bros. v. Abacus Direct Corp.*,
No. 01 C 6158, 2003 WL 21147985 (N.D. Ill. May 14, 2003) ............................................15

*Andren & Assocs. v. Scitex Am. Corp.*,
No. 95 C 276, 1995 WL 669109 (N.D. Ill. Nov. 8, 1995)....................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................6

*Atkins v. Hasan*,
No. 15 CV 203, 2015 WL 3862724 (N.D. Ill. June 22, 2015) ..............................................7

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) .................................................................................................7

*Carpenter v. McDonald's Corp.*,
580 F. Supp. 3d 512 (N.D. Ill. 2022) ...................................................................................16

*Chatz v. World Wide Wagering, Inc.*,
413 F. Supp. 3d 742 (N.D. Ill. 2019) .....................................................................................9

*Clark v. Microsoft Corp.*,
No. 23 C 695, 2023 WL 5348760 (N.D. Ill. Aug. 21, 2023)...........................................12, 17

*Danhauer v. Morgan Stanley Smith Barney, LLC*,
No. 14 C 7938, 2015 WL 4387821 (N.D. Ill. July 8, 2015) ................................................15

*Flannery v. R.I.A.A.*,
354 F.3d 632 (7th Cir. 2004) ...............................................................................................10

*Gershfeld v. Teamviewer US, Inc.*,
No. SACV 21-00058, 2021 WL 3046775 (C.D. Cal. June 24, 2021) ...................................10

*Gorgas v. Amazon.com, Inc.*,
No. 22 CV 5159, 2023 WL 4209489 (N.D. Ill. June 23, 2023)..............................................8

*Haywood v. Massage Envy Franchising, LLC*,
887 F.3d 329 (7th Cir. 2018) .................................................................................................6

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) ..............................................................................16, 17

**TABLES OF AUTHORITIES**

*(Continued)*

**Page(s)**

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ................................................10

*Horn v. Method Prods., PBC*,
   No. 21 C 5621, 2022 WL 1090887 (N.D. Ill. Apr. 12, 2022)................................16

*In re Google Assistant Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................................10

*Kloss v. Acuant, Inc.*,
   462 F. Supp. 3d 873 (N.D. Ill. 2020) ....................................16

*Laborers' Pension Fund v. Lake City Janitorial, Inc.*,
   758 F. Supp. 2d 607 (N.D. Ill. 2010) ....................................9

*Martinez v. Wexford Health Servs., Inc.*,
   No. 18-CV-50164, 2021 WL 1546429 (N.D. Ill. Apr. 20, 2021) ................7, 9

*Medline Indus. Inc. v. Maersk Med. Ltd.*,
   230 F. Supp. 2d 857 (N.D. Ill. 2002) ....................................14

*Namuwonge v. Kronos, Inc.*,
   418 F. Supp. 3d 279 (N.D. Ill. 2019) ....................................16

*Patino v. Sheen Cleaners, Inc.*,
   No. 19-cv-06817, 2021 WL 1209026 (N.D. Ill. Mar. 31, 2021) ................7

*Paulsen v. Abbott Lab'ys*,
   368 F. Supp. 3d 1152 (N.D. Ill. 2019) ....................................7

*Scott v. Aon Hewitt Fin., Advisors, LLC*,
   No. 17 C 679, 2018 WL 1384300 (N.D. Ill. Mar. 19, 2018) ................10

*SMS Assist L.L.C. v. E. Coast Lot & Pavement Maint. Corp.*,
   913 F. Supp. 2d 612 (N.D. Ill. 2012) ....................................9

*Tierney v. Vahle*,
   304 F. 3d 734 (7th Cir. 2002) ....................................10

*United States v. Bestfoods*,
   524 U.S. 51 (1998)....................................9

*USA-Halal Chamber of Comm., Inc. v. Best Choice Meats, Inc.*,
   402 F. Supp. 3d 427 (N.D. Ill. 2019) ....................................12

**TABLE OF AUTHORITIES**

*(Continued)*

**Page(s)**

*Vance v. Amazon.com Inc.*,
    534 F. Supp. 3d 1314 (W.D. Wash. 2021)...........................................................18

*Vaughan v. Biomat USA, Inc.*,
    No. 20-cv-4241, 2022 WL 4329094 (N.D. Ill. Sept. 19, 2022) ............................11

*Wittman v. Koenig*,
    831 F.3d 416 (7th Cir. 2016) ...............................................................................18

*Wright v. Associated Ins.*,
    29 F.3d 1244 (7th Cir. 1994) ...............................................................................10

*Young v. Amazon Logistics, Inc.*,
    No. 23-cv-03186 (June 29, 2023), Dkt. No. 12 .......................................................5

*Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    742 F. Supp. 1359 (N.D. Ill. 1990) .........................................................................6

STATUTES

740 ILCS 14/15 ................................................................................................ *passim*

OTHER AUTHORITIES

*Disclose*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-
    webster.com/dictionary/disclose (last visited Sept. 4, 2023)................................18

*Disseminate*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-
    webster.com/dictionary/disseminate (last visited Sept. 4, 2023)..........................18

Fed. R. Civ. P. 8 .........................................................................................7, 8, 10

Fed. R. Civ. P. 12(d) ...............................................................................................11

*Frequently Asked Questions About Amazon Flex*, AMAZON,
    https://flex.amazon.com/faq (last visited Sept. 4, 2023)......................................10

Local Rule 40.4 ........................................................................................................5

*What is Amazon Flex?*, AMAZON, https://flex.amazon.com/ (last visited Sept. 4,
    2023). ......................................................................................................................1

## I.  INTRODUCTION

Rodneka Perry and Samantha Young ("Plaintiffs") perform local deliveries to Amazon customers as independent contractors through a program called Amazon Flex. *See generally What is Amazon Flex?*, AMAZON, https://flex.amazon.com/ (last visited Sept. 4, 2023). Like all Flex drivers, Plaintiffs signed up for the Flex program via a mobile application (the "Flex App"). Plaintiffs' claims in this case center on the process by which the Flex App confirms drivers' identities by automatically analyzing and comparing images that drivers upload to the App. As Plaintiffs implicitly acknowledge, that identity-check process serves an essential purpose: to protect Amazon customers and their property, which is entrusted to Flex drivers for delivery.

The Flex App verifies drivers' identities only after drivers (1) receive advance notice about the identity-check process, including how the process "may derive from your … photo[s] a facial scan or similar biometric identifier," and (2) affirmatively consent. *Infra*, Part II.A. Nevertheless, Plaintiffs now allege the identity-check process violated their rights under the Illinois Biometric Information Privacy Act ("BIPA"), and they seek relief against an apparently random assortment of Amazon entities (the "Amazon Defendants").[1] The gist of Plaintiffs' claims is that they did not know about or consent to the Flex App analyzing data about their images—data Plaintiffs characterize as biometric data under BIPA—to verify their identities.[2]

---

[1] Specifically, Plaintiffs have named as defendants: (1) Amazon Logistics, Inc.; (2) Amazon.com, Inc.; (3) Amazon.com Services LLC f/k/a Amazon.com LLC; and (4) Amazon Web Services, Inc.

[2] For brevity, the Amazon Defendants use the term "biometric data" throughout this motion to refer to "biometric identifiers" and "biometric information" as those terms are defined by BIPA. *See* 740 ILCS 14/10. To be clear, the Amazon Defendants do not concede that any data allegedly collected or used by the Flex App qualifies as "biometric identifiers" or "biometric information."

1

Plaintiffs also allege that biometric data from the images they uploaded to the Flex App was disclosed without their consent, including to unknown third parties.

Plaintiffs' claims depend entirely on conclusory and implausible allegations and are contradicted by the very documents on which their complaint relies. Their claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for three reasons.

First, Plaintiffs' First Amended Complaint ("FAC") fails to put any of the four Amazon Defendants on notice of the specific allegations against them. The FAC simply levels its allegations equally and indiscriminately against all the defendants, without even trying to explain what each defendant purportedly did (or did not do) to violate the law. Because the Federal Rules prohibit such scattershot pleading, the FAC should be dismissed in its entirety. Alternatively, because Amazon Logistics, Inc. is the sole entity with whom Plaintiffs allegedly interacted, the Court should dismiss all claims against all other Amazon Defendants.

Second, the FAC incorporates by reference materials that bar Plaintiffs' claims, including public "FAQs" about Flex; the Flex terms of service to which Plaintiffs agreed; and a detailed consent form Plaintiffs were required to complete before their images were analyzed. Those materials show that the Amazon Defendants *did* provide the notice, and *did* obtain the consent, that Plaintiffs claim BIPA requires. Separately, the Flex terms of service to which Plaintiffs necessarily agreed include a limitation-of-liability clause barring Plaintiffs' claims.

Third, the FAC fails to state a claim for unlawful disclosure under Section 15(d) of BIPA. The FAC offers only the barest of conclusory allegations about the Amazon Defendants' purported disclosures of Plaintiffs' biometric data. And as many courts have held, merely parroting the statutory language of Section 15(d) is insufficient to survive a motion to dismiss. Further, to the extent Plaintiffs' Section 15(d) claims are based on the notion that the Amazon

Defendants allegedly disclosed biometric data *among themselves*—not to third parties—those claims fail as a matter of law because Section 15(d) does not apply to such internal sharing.

## II.    BACKGROUND

### A.    Amazon Flex and the Flex Identity-Check Process

Amazon Flex is a "job service platform" that allows "independent contractors," like Plaintiffs, to earn money for "deliver[ing] packages" to Amazon customers. FAC ¶ 2. Prospective Flex drivers must first download the Flex App and complete the Flex onboarding process to participate in Flex. *See id.* ¶¶ 56–57. That onboarding process requires all prospective drivers to agree to the Amazon Flex Independent Contractor Terms of Service ("Flex TOS"). Declaration of John Rodgers ("Rodgers Decl.") ¶ 19.[3]

Plaintiffs claim that, in "mid-2019," the Amazon Defendants "installed a feature" in the Flex App that required Flex drivers to "scan [their] face[s] using their mobile device[s] for identity verification purposes." FAC ¶¶ 7, 59. Multiple screenshots reflecting some (but not all) of the Flex App's identity-check process are included in the FAC. *See id.* ¶¶ 59–60.

Flex drivers must satisfy several requirements before they are allowed to upload images and use the identity-check process in the Flex App. Two requirements are most relevant here.

First, all Flex drivers must agree to the Flex TOS. *See* Rodgers Decl. ¶ 19. The 2019 version of the Flex TOS, to which both Plaintiffs agreed, provides detailed notice about the identity-check process. *See id.* ¶¶ 36–37.[4] In particular, the 2019 Flex TOS state that:

---

[3] As explained below, the Court may consider the Flex App's user interface and the Flex TOS because both are incorporated by reference in Plaintiffs' FAC. *See* Part IV.B.

[4] Plaintiff Young necessarily agreed to the 2019 Flex TOS because the Flex App requires prospective drivers to agree to the then-current TOS to create Flex accounts and Plaintiff Young created her Flex account when the 2019 Flex TOS was in effect. *See* Rodgers Decl. ¶¶ 21–23, 25. Plaintiff Perry allegedly created her Flex account in "September 2018," before the 2019 Flex TOS went into effect. FAC ¶ 4. But Plaintiff Perry received the 2019 Flex TOS via email on or

- The Flex App will use "your submitted photos … , driver's license, or government-issued ID for identification purposes"; and

- In order to verify drivers' identities, the Flex App "may derive from your photo a facial scan or similar biometric identifier ('Biometric Information'), and collect, store, and use Biometric Information from your submitted photos … , driver's license, or government-issued ID."

Rodgers Decl., Ex. B § VI. Notably, the 2019 Flex TOS also include the following language

clearly explaining the policies for retaining and deleting relevant data:

**Photos Use and Biometric Information Retention Policy**

Amazon retains a user's Biometric Information for up to 30 days after it is generated. Thereafter, Amazon will promptly delete the Biometric Information. Note that this means Amazon may need to retain your Biometric Information after you stop using the Amazon delivery application for purposes of ongoing fraud detection and investigation.

*Id.*

Second, all drivers must read and affirmatively agree to an "Identity Verification

Consent" screen in the Flex App. *See* Rodgers Decl. ¶ 37. That screen also makes clear that the

identity-check process may involve the collection and use of "Biometric Information":

As a condition of applying to be an Amazon Flex delivery partner, you consent to allow Amazon Flex to verify your identity and share your picture with our customers for identification purposes. Specifically, you agree that Amazon Flex may collect, store, use, and derive biometric data from your submitted pictures (including your pictures we already have on file), driver's license, or government-issued ID (such pictures and derived biometric data collectively are your "Identity Data"). Amazon Flex will use your Identity Data to confirm your identity from time to time. Amazon Flex will keep your Identity Data for as long as permitted by applicable law or until you request deletion, following either of which Amazon Flex will delete your Identity Data as detailed in the FAQ.
…
By tapping ACCEPT, I certify that I have read, understand and accept all statements in the Non-Fair Credit Reporting Act Acknowledgments And Authorizations For

---

about October 3, 2019 and continued to deliver packages for Amazon Flex afterwards. *See* Rodgers Decl. ¶ 29. Plaintiff Perry thereby agreed to the 2019 Flex TOS. *See id.* ¶ 31; Rodgers Decl., Ex. A § 13. (Flex drivers are subject to subsequent versions of the Flex TOS if they continue driving for Flex after receiving notice of subsequent versions).

4

Background Check And Identity Verification Consent, and that I have read and understand any applicable state notices.

*Id.*[5] Only drivers who affirmatively accept and provide the Identity Verification Consent are allowed to use the identity-check process described in Plaintiffs' FAC. *See id.*

## B. Plaintiffs' Claims

Plaintiff Perry alleges she downloaded the Flex App, created a Flex account, and began delivering packages for Flex starting in September 2018. *See* FAC ¶ 4. Plaintiff Young alleges she did the same starting in December 2019. *See id.* ¶ 5. Both Plaintiffs allege that the identity-check process at the heart of this case was adopted in "mid-2019." *Id.* ¶ 7. Both Plaintiffs also allege that the Flex App's identity-check process violated their rights under BIPA because the Amazon Defendants failed to provide notice about the process and never "secur[ed] [their] informed written consent" to the process. *Id.* ¶ 10; *see also id.* ¶ 62.[6]

---

[5] As described in the Rodgers Declaration, there have been minor variations in the Identity Verification Consent language from 2018 through the present. Rodgers Decl. ¶ 37. The variations do not differ in substance, and the Identity Verification Consent copied here (that was in effect from November 2018 through January 2020) would have been the one reviewed by Plaintiffs based on their sign-up dates and the date that the identity check process was introduced in 2019. *See id.* ¶¶ 35–36.

[6] The recent addition of Plaintiff Young to this case is the culmination of months of Plaintiffs' procedural gamesmanship. After Plaintiff Perry filed this case in state court, but before the Amazon Defendants timely removed this case to federal court, Plaintiff Young filed a duplicative case before Judge Pacold. Because the *Young* case was indisputably related to this case, and because the *Young* case was the lower-numbered federal case, the Amazon Defendants moved to reassign this case to Judge Pacold under Local Rule 40.4. *See* Mot. to Reassign *Perry* as Related Case, *Young v. Amazon Logistics, Inc.*, No. 23-cv-03186 (June 29, 2023), Dkt. No. 12. Counsel for Plaintiff Perry opposed reassignment. The Amazon Defendants then notified counsel for both Plaintiffs that the Amazon Defendants planned to ask Judge Pacold to consolidate the *Young* and *Perry* cases. Despite multiple requests, Plaintiffs' counsel refused to provide their positions on that proposed consolidation. Instead, on the day by which the Amazon Defendants said they would move for consolidation, Plaintiff Young abruptly dismissed the *Young* case. Shortly thereafter, Plaintiffs asked this Court for leave to file a single, consolidated complaint with both Plaintiff Perry and Plaintiff Young as named plaintiffs—precisely the outcome the Amazon Defendants had sought weeks earlier.

Based on that core allegation, Plaintiffs assert three BIPA claims. First, they allege the Amazon Defendants violated Section 15(a) of BIPA by possessing their biometric data without developing and complying with a public retention schedule for destroying that data. *See id.* ¶¶ 85–95. Second, they allege the Amazon Defendants violated Section 15(b) of BIPA by collecting their biometric data without providing notice and obtaining their consent. *See id.* ¶¶ 96-107. Third, they allege the Amazon Defendants violated Section 15(d) of BIPA by disclosing Plaintiffs' biometric data to each other and to unnamed "other third parties" without Plaintiffs' consent. *See id.* ¶¶ 108–18.

## III.  STANDARD UNDER 12(B)(6)

"To survive a motion to dismiss under Rule 12(b)(6), the FAC must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's claims should be dismissed under those well-established principles.[7]

## IV.  ARGUMENT

### A.  Plaintiffs' Improper Collective Pleading Requires Dismissal of All Claims

As a threshold matter, the FAC utterly fails to differentiate among the four named defendants and therefore fails to put any of the defendants on notice of the specific wrongdoing of which they stand accused. The FAC therefore violates Rule 8 and should be dismissed in its

---

[7] The Amazon Defendants respectfully request that the Court first consider their motion to compel arbitration, Doc. 28 (filed concurrently with this motion to dismiss), and address this motion only if the Court denies the motion to compel arbitration. *See Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1362 (N.D. Ill. 1990).

entirety. Alternatively, to the extent that Plaintiffs name Amazon.com, Inc. as a defendant merely because it is the parent company of Amazon Logistics, Inc., that is improper, and all claims against Amazon.com, Inc. should be dismissed.

"Each defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Accordingly, "[a] complaint based on a theory of collective responsibility must be dismissed." *Id.*; *see also Paulsen v. Abbott Lab'ys*, 368 F. Supp. 3d 1152, 1171 (N.D. Ill. 2019) ("Seventh Circuit … law require[s] that a plaintiff structure her complaint such that each individual defendant knows what it did that allegedly harmed the plaintiff."). Applying this rule, courts routinely dismiss claims lumping together multiple defendants without differentiation. *See Martinez v. Wexford Health Servs., Inc.*, No. 18-CV-50164, 2021 WL 1546429, at *3 (N.D. Ill. Apr. 20, 2021) (so holding); *Patino v. Sheen Cleaners, Inc.*, No. 19-cv-06817, 2021 WL 1209026, at *3 (N.D. Ill. Mar. 31, 2021) (dismissing a corporate defendant because the complaint "contain[ed] no specific allegations against it, only general allegations lumping the defendants together"). In short, "[d]etails about who did what are not merely nice to-have features … ; to pass muster under Rule 8 of the Federal Rules of Civil Procedure, a claim to relief must include such particulars." *Atkins v. Hasan*, No. 15 CV 203, 2015 WL 3862724, at *2 (N.D. Ill. June 22, 2015).

Plaintiffs' FAC includes no such particulars. It does not even try to describe the role each Amazon Defendant played in the alleged violations of BIPA, let alone how each Amazon Defendant supposedly harmed Plaintiffs. Indeed, the FAC seems designed to obscure Plaintiffs' specific accusations against each defendant. For example, the FAC defines "Amazon" and "Defendants" to include all four Amazon entities. FAC at 1. It then levels its substantive allegations against "Amazon" or "Defendants" collectively, without identifying how any

particular defendant acted or failed to act unlawfully. *See, e.g.*, *id.* ¶¶ 85–118. By way of example only, the FAC does not allege which defendant (if any) allegedly developed and operated the Flex App's identity-check process; which defendant (if any) allegedly collected and/or analyzed data about Flex drivers' images; which defendant (if any) allegedly disclosed data about Flex drivers; and which defendants (if any) received data about Flex drivers that the other defendants purportedly disclosed.

Plaintiffs may argue that their scattershot allegations are permissible because all their allegations apply to all defendants equally. *Cf. Gorgas v. Amazon.com, Inc.*, No. 22 CV 5159, 2023 WL 4209489, at *3 (N.D. Ill. June 23, 2023). But that argument is not persuasive here because interpreting Plaintiffs' FAC that way would render Plaintiffs' theories nonsensical and contradictory. For instance, Plaintiffs maintain that *only* Amazon Logistics, Inc. "provides … [the] Amazon Flex … job service platform" and its "corresponding application." FAC ¶ 2. But just a few paragraphs later, Plaintiffs further allege that *all* the Amazon Defendants require "Amazon Flex users to take and upload pictures of themselves" via the Flex App. *Id.* ¶ 14. Of course, both theories cannot be true at the same time.

Relatedly, Plaintiffs repeatedly try to avoid their Rule 8 obligations by asserting claims against a *program*—Amazon Flex—rather than any particular *defendant*. *See, e.g.*, *id.* ¶ 7 (alleging that "Amazon Flex installed a feature where … the user is required to scan his or her face"); *id.* ¶ 9 (alleging, incorrectly, that "Amazon Flex admits" to collecting biometric data covered by BIPA). That, too, makes it impossible for each Amazon Defendant to understand what it is accused of doing or not doing with respect to the Flex App.

In short, by failing to specify which allegations apply to which Amazon Defendants, Plaintiffs have failed to put each "specific defendant on notice as to their alleged personal

involvement" in the alleged misconduct. *Martinez*, 2021 WL 1546429, at *3. The Court should therefore dismiss all claims against all Amazon Defendants. Alternatively, because Amazon Logistics, Inc. is the only defendant with which Plaintiffs specifically allege they interacted, *see* FAC ¶ 2, Plaintiffs' claims against all other defendants should be dismissed.

Separately, nothing in the FAC suggests that Amazon.com, Inc. is a properly named defendant. It seems Plaintiffs sued Amazon.com, Inc. only because it is the parent company of Amazon Logistics, Inc. But it is a "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation ... is not liable for the acts of its subsidiaries." *United States v. Bestfoods,* 524 U.S. 51, 61–62 (1998) (collecting cases). Rather, a subsidiary is treated as the alter ego of its parent corporation and the corporate veil is pierced only where "one corporation is so organized and controlled and its affairs so conducted that it is a mere instrumentality or adjunct of another corporation." *Chatz v. World Wide Wagering, Inc.*, 413 F. Supp. 3d 742, 758 (N.D. Ill. 2019). "In general, courts are reluctant to pierce the corporate veil." *SMS Assist L.L.C. v. E. Coast Lot & Pavement Maint. Corp.*, 913 F. Supp. 2d 612, 630 (N.D. Ill. 2012). A party seeking to pierce the corporate veil therefore "must seek that relief in his pleading." *Laborers' Pension Fund v. Lake City Janitorial, Inc.*, 758 F. Supp. 2d 607, 618 (N.D. Ill. 2010).

Here, Plaintiffs do not allege any facts at all about Amazon.com, Inc., let alone facts plausibly suggesting that Amazon.com, Inc. itself acted or failed to act in violation of BIPA. Nor have Plaintiffs alleged any facts that could possibly support piercing the corporate veil and holding Amazon.com, Inc. liable for the acts or omissions of any other defendant. All claims against Amazon.com, Inc. could and should be dismissed for that reason alone.

9

**B.      Plaintiffs' Claims Are Contradicted by Documents Incorporated in the FAC**

Even if Plaintiffs' FAC passes muster under Rule 8, it should nevertheless be dismissed because it incorporates by reference materials that thoroughly undermine Plaintiffs' claims—namely, the user interface of the Flex App, the Flex TOS, and the Flex FAQs, which are available on the public Flex website. *See Frequently Asked Questions About Amazon Flex*, AMAZON, https://flex.amazon.com/faq (last visited Sept. 4, 2023) ("Flex FAQs").

When resolving motions to dismiss, courts may consider documents that "are referred to in the plaintiff's complaint and are central to [the] claim." *Wright v. Associated Ins.*, 29 F.3d 1244, 1248 (7th Cir. 1994). That long-standing rule is meant to "prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *see also Tierney v. Vahle*, 304 F. 3d 734, 738 (7th Cir. 2002) (similar). Further, where incorporated documents contradict the complaint, "the document's facts or allegations trump those in the complaint." *Flannery v. R.I.A.A.*, 354 F.3d 632, 638 (7th Cir. 2004); *see also Scott v. Aon Hewitt Fin., Advisors, LLC*, No. 17 C 679, 2018 WL 1384300, at *4 (N.D. Ill. Mar. 19, 2018) (collecting cases).

The Seventh Circuit "has been relatively liberal in its approach to [this] rule." *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009), *abrogated on other grounds by Hughes v. Northwestern Univ.*, 63 F.4th 615 (7th Cir. 2023). Accordingly, courts in this circuit often treat online terms of service, privacy policies, and similar documents as incorporated by reference when they are implicated by plaintiffs' claims. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 813–14 (N.D. Cal. 2020) (collecting cases holding same); *Gershfeld v. Teamviewer US, Inc.*, No. SACV 21-00058, 2021 WL 3046775, at *1 n.1 (C.D. Cal. June 24, 2021) (considering defendant's "End-User License Agreement as well as screenshots of its website and documents it sent to Plaintiff" where plaintiff's complaint included "a screenshot of

Defendant's website" and plaintiff's "claims depend on the communications"), *aff'd*, No. 21-55753, 2023 WL 334015 (9th Cir. Jan. 20, 2023). Similarly, courts routinely consider screen captures of an online process when a plaintiff's allegations are based on or refer to that process. *See Vaughan v. Biomat USA, Inc.*, No. 20-cv-4241, 2022 WL 4329094, at *5–6 (N.D. Ill. Sept. 19, 2022) (considering BIPA consent forms attached to defendants' motion to dismiss).

Here, the FAC repeatedly cites and quotes the Flex FAQs. *See* FAC at 3 n.1; *id.* ¶ 9. Those FAQs are therefore incorporated by reference under controlling law.

Further, the core theory of Plaintiffs' case is that the Flex App's identity-check process violates BIPA, including BIPA's notice and consent requirements. Plaintiffs' FAC seeks to bolster that theory with screen captures showing the Flex App's user interface and experience. *See, e.g.*, FAC ¶¶ 59–60. But the FAC simply ignores other portions of the user interface—including the Flex TOS and the Identity Verification Consent screen described above—that directly undermine Plaintiffs' claims. Plaintiffs' FAC should therefore be deemed to incorporate those portions of the interface, as well, not just those Plaintiffs have selectively and misleadingly included in the FAC. Any other result would impermissibly allow Plaintiffs to "surviv[e] a motion to dismiss by … failing to attach relevant documents." *188 LLC*, 300 F.3d at 735.[8]

### 1. The incorporated Flex FAQs show that the Amazon Defendants complied with Section 15(a) of BIPA.

Section 15(a) of BIPA requires a private entity in possession of biometric information to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the

---

[8] If the Court determines that any particular materials are not incorporated into Plaintiffs' FAC by reference, then the Amazon Defendants respectfully request that those documents be "excluded" from consideration at this stage and that the Court not convert this motion into a motion for summary judgment. Fed. R. Civ. P. 12(d).

initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

The Amazon Defendants do not admit that the Flex App's identity-check process implicates the kinds of biometric data covered by BIPA, or that the process results in the "possession" of biometric data within the meaning of Section 15(a). But even if the Flex App's identity-check process potentially triggers Section 15(a), Plaintiffs' claims still fail because the Amazon Defendants complied with Section 15(a)'s requirements.

As explained above, Plaintiffs' FAC incorporates by reference the Flex FAQs by quoting them and citing them.[9] And the Flex FAQs, in turn, include the following publicly available retention-and-deletion policy for "Biometric Information":

**What is Amazon's Biometric Information retention policy?**

To use the Amazon [Flex App], Amazon requires that users provide a photo to help us identify them. Using this photo, we may create a facial scan or similar biometric identifier, which we refer to as "Biometric Information." This policy governs Amazon's retention of users' Biometric Information. *Amazon may retain a user's Biometric Information for up to 30 days after it is created for fraud detection and investigation purposes, whether or not the user continues using the Amazon delivery app during this period. After 30 days, Amazon will promptly delete the Biometric Information.*

---

[9] If the Court does not agree that the FAC incorporates the Flex FAQs by reference, the Amazon Defendants request that the Court take judicial notice of the Flex FAQs because their contents are not in dispute and are hosted on a public website. *USA-Halal Chamber of Comm., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 431 n.3 (N.D. Ill. 2019) ("We may take judicial notice of undisputed material hosted on a party's public website.") (cleaned up); *see also Clark v. Microsoft Corp.*, No. 23 C 695, 2023 WL 5348760, at *1 (N.D. Ill. Aug. 21, 2023) (taking judicial notice of Microsoft data policy in reviewing motion to dismiss BIPA claims because policy was publicly available). The Flex FAQs can be publicly found at flex.amazon.com/faq.

Rodgers Decl. ¶ 41 (emphasis added).[10] Plaintiffs' FAC quotes this very Flex FAQ but conveniently omits the italicized language. FAC ¶ 9.

Consistent with Section 15(a), the retention-and-deletion policy set forth above is publicly available and easily accessible on the Amazon Flex website. *See* Rodgers Decl. ¶ 41; *see also* FAC at 3 n.1 (citing website and FAQs). Further, that policy specifically discloses for how long "Biometric Information" used to verify Flex drivers' identities will be retained; the purposes for which that data is retained; and when that data will be destroyed. *See* Rodgers Decl. ¶ 41. The retention-and-deletion policy in the Flex FAQs therefore satisfies every requirement of Section 15(a), directly contradicting Plaintiffs' conclusory claim that the Amazon Defendants failed to publish "BIPA-compliant retention schedules and guidelines for permanently destroying Plaintiffs' ... biometric data." FAC ¶ 94. Plaintiffs' Section 15(a) claim fails.

### 2. The incorporated 2019 Flex TOS and Identity Verification Consent screen show that the Amazon Defendants complied with Section 15(b).

Section 15(b) of BIPA requires a private entity to provide notice and obtain consent before collecting biometric data from Illinois residents. *See* 740 ILCS 14/15(b). Here again, the Amazon Defendants do not admit that the Flex App's identity-check process implicates the kinds of biometric data covered by BIPA, or that the process results in the "collection" of biometric data within the meaning of Section 15(b). But even if the Flex App's identity-check process potentially triggers Section 15(b), Plaintiffs' claims still fail because the Amazon Defendants complied with Sections 15(b)'s notice-and-consent requirements.

First, both Plaintiffs agreed to the 2019 Flex TOS, which are incorporated by reference in the FAC. *Supra*, Part IV.B. The 2019 Flex TOS include a clear and conspicuous explanation of

---

[10] As noted above (Part II.A) this same retention-and-deletion policy is also included in the 2019 Flex TOS to which both Plaintiffs agreed.

the Flex App's identity-check process, including its potential use of "Biometric Information" that may be "derive[d] from … photo[s]" uploaded by Flex drivers like Plaintiffs. Rodgers Decl., Ex. B § VI. Thus, the 2019 Flex TOS more than adequately fulfill Section 15(b)'s notice requirements. *See* 740 ILCS 14/15(b)(1)–(2).

Second, before drivers may use the identity-check process described in the FAC, they must first agree to the Identity Verification Consent screen, which Plaintiffs also incorporated in the FAC. *See supra*, Part IV.B. Like the 2019 Flex TOS, the Identity Verification Consent screen provides clear and detailed notice that the identity-check process "may collect, store, use, and derive biometric data" from drivers' "submitted pictures," both "to verify … identity" and "for identification purposes." Rodgers Decl. ¶ 37. Equally important, the Identity Verification Consent screen requires all Flex drivers—including Plaintiffs—to affirmatively indicate their consent by either clicking an "accept" button or checking a box next to an acceptance statement. *Id.* The Identity Verification Consent screen therefore satisfies Section 15(b)'s notice requirements *and* Section 15(b)'s express consent requirements. *See* 740 ILCS 14/15(b)(3).

In short, contrary to the allegations in the FAC, both Plaintiffs necessarily received detailed notice about the Flex App's identity-check process, including its use of "Biometric Information," and consented to the same. Plaintiffs' Section 15(b) claim fails.

## C. Plaintiffs' Claims Are Barred by the Flex TOS

Plaintiffs' claims fail for an additional and independent reason: both Plaintiffs agreed to the limitation of liability clause in the 2019 Flex TOS, and that clause bars their claims.

"A court may dismiss a claim if a contractual limitation of remedies provision prohibits the claimant from recovering the damages sought." *Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 869 (N.D. Ill. 2002). Thus, courts often consider limitation of liability clauses at the motion to dismiss stage. *See Danhauer v. Morgan Stanley Smith Barney, LLC*, No. 14 C

14

7938, 2015 WL 4387821, at *2 (N.D. Ill. July 8, 2015) (dismissing all claims at 12(b)(6) stage because they were "precluded by a liability limitation provision"); *Allen Bros. v. Abacus Direct Corp.*, No. 01 C 6158, 2003 WL 21147985, at *1 (N.D. Ill. May 14, 2003) (partially granting 12(b)(6) motion to dismiss based on contractual limitation of liability). Evaluation of a contractual limitation of liability provision is even appropriate where the plaintiff does not attach the parties' agreement to the complaint or mention the limitation provision in the complaint. *See Andren & Assocs. v. Scitex Am. Corp.*, No. 95 C 276, 1995 WL 669109, at *1, *3 (N.D. Ill. Nov. 8, 1995) (granting motion to dismiss for failure to state a claim because limitation of remedies provision barred claims, even where plaintiff swore via affidavit that he had never seen the agreement containing that provision, nor reviewed or discussed any of its provisions).

Here, the 2019 Flex TOS to which Plaintiffs agreed, and which are incorporated in the FAC, contain an express limitation of liability:

> Amazon will not be liable for damages of any kind, including direct damages, loss of goodwill, lost opportunities or profits, anticipated amount of business, expenditures, investments, leases, or commitments made by you in connection with the Program or otherwise. Except for your indemnity obligations under Section 9 below and any liability arising out of your breach of the section of the Program Policies entitled "Confidentiality and Personal Information," and except as indicated below, NEITHER PARTY WILL BE LIABLE UNDER ANY CIRCUMSTANCES FOR DIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, INCIDENTAL, OR INDIRECT DAMAGES OF ANY KIND, HOWEVER CAUSED AND UNDER ANY THEORY OF LIABILITY, WHETHER RELATED TO THIS AGREEMENT, LICENSED MATERIALS, THE PROGRAM OR THE SERVICES, AND WHETHER IN CONTRACT, STRICT LIABILITY OR TORT (INCLUDING NEGLIGENCE OR OTHERWISE) EVEN IF AMAZON HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE. Nothing in this Agreement will limit or exclude either party's liability for any matter or individual remedy that may not be limited or excluded by applicable laws, rules, or regulations.

Rodgers Decl., Ex. B § 8. Because Plaintiffs' claims are "theor[ies] of liability" that seek "damages of any kind," they are categorically barred by that provision. *See id.* For that reason, too, the FAC should be dismissed.

15

**D.    Plaintiffs' Section 15(d) Claim is Conclusory and Meritless**

Lastly, even if Plaintiffs could overcome all the obstacles above, the Court should at least dismiss their Section 15(d) claim. Plaintiffs' theory that the Amazon Defendants violated Section 15(d) by disclosing their biometric data to unnamed and unknown third parties is wholly conclusory. And their alternative theory—that is, that the Amazon Defendants violated Section 15(d) by disclosing their data "amongst Defendants"—does not state a cognizable claim under BIPA. FAC ¶ 49.

**3.    Plaintiffs fail to plead any facts from which this Court could infer that their data was disclosed to third parties.**

Courts frequently dismiss Section 15(d) claims that offer only "conclusory allegations of disclosure" and "merely parrot BIPA's statutory language." *Horn v. Method Prods., PBC*, No. 21 C 5621, 2022 WL 1090887, at *3 (N.D. Ill. Apr. 12, 2022); *see also Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285 (N.D. Ill. 2019) (dismissing Section 15(d) claim because "[Plaintiff] did not allege other specifics related to any disclosure by [Defendants] to a third party."); *Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 877 (N.D. Ill. 2020) (dismissing Section 15(d) claim because plaintiff's "barebone factual support and recitation of statutory language is not enough to put [defendant] on notice of [plaintiff's] claims in order to properly investigate or prepare a defense"); *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 519 (N.D. Ill. 2022) (dismissing Section 15(d) claim for lack of any factual details supporting allegation of disclosure); *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020) (dismissing Section 15(d) claim because complaint "offer[ed] no basis for the allegation that [defendant] disclosed his biometric data (or that of the putative class members)"); *Clark*, 2023 WL 5348760, at *5 (dismissing Section 15(d) claim because complaint lacked sufficiently particular allegations of dissemination to "bring this claim from speculative to plausible").

Plaintiffs' Section 15(d) claims are indistinguishable from the barebones claims dismissed in the cases above. Simply stated, Plaintiffs' FAC "contains no allegations of fact which, if true, suggest there is any basis to even *suspect* that [Amazon] disseminated the biometric data at issue." *Heard*, 440 F. Supp. 3d at 969. Rather, the FAC merely parrots the statutory language of Section 15(d) and asserts, with no factual support, that "Defendants systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiffs' and the Class's biometric identifiers and/or biometric information[.]" FAC ¶ 117. That's it. Plaintiffs do not allege when, where, why, or how any such data was disclosed. Nor do they offer any facts to support their rank speculation that Amazon—"one of the largest platforms and providers for cloud computing services"—employs an unnamed third party to "host" data for the Flex App. *Id.* ¶ 3. Plaintiffs' Section 15(d) claim should be dismissed, just as the identical claims in *Heard*, *Horn*, *Namuwonge*, *Carpenter*, and *Kloss* were dismissed.

### 4. The Court should reject Plaintiffs' novel theory of intra-organizational "disclosure."

Perhaps recognizing that they cannot plausibly allege disclosure to any third parties, Plaintiffs contend that the Amazon Defendants violated Section 15(d) by sharing biometric data among themselves. The plain language of BIPA and long-established canons of statutory construction foreclose that novel theory.

Section 15(d)'s disclosure prohibition applies to "private entit[ies]." 740 ILCS 14/15(d). "Private entity," in turn, means "any individual, partnership, corporation, limited liability company, association, *or other group, however organized*." 740 ILCS 14/10 (emphasis added). Here, Plaintiffs allege that the *Amazon Defendants*, acting as a "group," violated Section 15(d) by sharing Plaintiffs' biometric data among themselves. *Id.*; *see also* FAC ¶ 61 (alleging that "*Amazon* disclosed Plaintiffs' sensitive biometric data to other Amazon entities") (emphasis

17

added). But that theory suffers from two fatal flaws. First, the plain language of Section 15(d) prohibits "disclos[ing], redisclos[ing], or otherwise disseminat[ing]" BIPA-covered data. 740 ILCS 14/15(d). Those verbs describe the act of divulging data to outsiders. *See, e.g.*, *Disclose*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/disclose (last visited Sept. 4, 2023) ("to make known or public"; "to expose to view"); *Disseminate*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/disseminate (last visited Sept. 4, 2023) ("to spread abroad as though sowing seed"). They do not describe the act of sharing data within the confines of a single "private entity." 740 ILCS 14/10.

Second, interpreting Section 15(d) to prohibit intra-organizational sharing would, as a practical matter, make it impossible for private entities to even discuss biometric data internally. That is a patently absurd result. Indeed, interpreting Section 15(d) that way would effectively prohibit all uses of biometric data, frustrating the intent of the Illinois legislature. *See Vance v. Amazon.com Inc.*, 534 F. Supp. 3d 1314, 1323 (W.D. Wash. 2021) ("BIPA did not intend to stop all use of biometric technology, especially those that BIPA recognized as potentially beneficial."). The Court should therefore decline to adopt Plaintiffs' absurd and unworkable reading of Section 15(d). *See Wittman v. Koenig*, 831 F.3d 416, 422 (7th Cir. 2016) (courts should interpret statutes "reasonably, to avoid absurd or unreasonable results").

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Amazon respectfully requests that the Court dismiss the FAC with prejudice.

Dated: September 5, 2023                    Attorneys for Defendants


                                            By:  */s/ Ryan Spear*
                                                 Ryan Spear

                                            Ryan Spear
                                            Nicola C. Menaldo
                                            **Perkins Coie LLP**
                                            1201 Third Avenue, Suite 4900
                                            Seattle, WA  98101-3099
                                            Telephone: 206.359.8000
                                            Fax: 206.359.9000
                                            Email: RSpear@perkinscoie.com
                                            Email: NMenaldo@perkinscoie.com

                                            Kathleen A. Stetsko
                                            J. Mylan Traylor
                                            **Perkins Coie LLP**
                                            110 N Upper Wacker Dr Suite 3400,
                                            Chicago, IL 60606
                                            Telephone: 312.324.8400
                                            Fax: 312.324.9400
                                            Email: KStetsko@perkinscoie.com
                                            Email: MTraylor@perkinscoie.com

                                            Hayden M. Schottlaender
                                            **Perkins Coie LLP**
                                            500 N. Akard St. Suite 3300
                                            Dallas, TX 75201
                                            Telephone: 214.965.7700
                                            Fax: 214.965.7799
                                            Email: HSchottlaender@perkinscoie.com

                                            Michael E. Kenneally
                                            **Morgan, Lewis & Bockius LLP**
                                            1111 Pennsylvania Avenue, N.W.
                                            Washington, DC 20004
                                            Telephone: 202.739.5893
                                            Fax: 202.739.3001
                                            Email: michael.kenneally@morganlewis.com